## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN  DIVISION

| | | |
|---|---|---|
| **RAPHAEL B WARE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:11-cv-00059-AKK** |
| **SUPREME BEVERAGE** | ) | |
| **COMPANY, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Raphael Ware pursues claims against Supreme Beverage Company, Inc.

("SBC") for discrimination, retaliation, and hostile work environment under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and §

1981 of the Civil Rights Act of 1866.[1]  *See* doc. 1.  Based on this court's review of

the evidence and the law, Ware failed to establish that racial animus factored into

the elimination of his Red Bull route and his subsequent transfer to a beer

merchandiser position, or that retaliatory animus factored into his discharge.

---

[1] Ware initially also sought relief under state law for alleged negligent supervisory
practices which purportedly led to the discriminatory environment and intentional infliction of
emotional distress.  Doc. 1. However, he abandoned his state law claims in his opposition to
SBC's motion for summary judgment.  *See* doc. 27 at 32.

1

Therefore, SBC's motion is due to be **GRANTED** as it relates to the demotion and retaliatory discharge claims.  However, there are disputed factual issues that preclude summary judgment on the race discrimination discharge claim. Therefore, SBC's motion related to that claim is **DENIED**.  The court sets this matter for a pretrial conference on **April 23, 2013 at 2:15 p.m.** and for trial on **June 24, 2013**.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(c)(2) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiffs' favor when sufficient competent evidence supports Plaintiffs' version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

3

## II.  <u>FACTUAL BACKGROUND</u>

SBC is a wholesale beverage distributor that sells beverages to restaurants and retail outlets.  Doc. 21-28 at 1.  SBC hired Ware, an African-American male, in 1994 as a merchandiser in beer sales at an initial pay rate of $310 per week.  Doc. 21-1 at 7; Doc. 21-29 at 1.  By July 1996, Ware made $475 per week as a merchandiser.  Doc. 21-29 at 1-2.  In addition to the merchandiser position, Ware worked as a delivery driver, route salesman and van salesman while employed at SBC.  Doc. 21-1 at 7-9, 11.

Sometime in 2005, SBC succeeded in becoming the exclusive distributor of the Red Bull drink in the Birmingham area, necessitating an expansion in its Red Bull group.  Doc. 21-8 at 1.  This led Tom Casebere, SBC's Sales Manager, to offer Ware a salesman position in the Red Bull group at a purported weekly salary of $500.  *Id*.; Doc. 21-1 at 13; Doc. 21-9 at 2.  Ware contests this assertion and maintains instead that the position paid purely on commission.  Doc. 21-1 at 15.  In any event, the position required Ware to market, sell, and deliver Red Bull products on his route, which included the Norwood, North Birmingham, Collegeville, Gardendale, and Bessemer neighborhoods.  Doc. 21-28 at 2; Doc. 21-1 at 17-18.  Ware contends that the route was less desirable because of its low sales volume and that SBC gave Caucasian employees with less experience and seniority more

4

desirable, high volume routes in predominately Caucasian neighborhoods such as Mountain Brook. Doc. 21-4 at 13; Doc. 21-1 at 18. The record does not clearly indicate whether one of these "desirable" routes was vacant at the time Ware transferred to the Red Bull group and, if so, whether Ware requested the route.

Ware reported initially to Red Bull Brand Manager David Phillips and later to Red Bull Sales Supervisor Ben Allen. Doc. 21-1 at 14-15; Doc. 21-28 at 2. Ware contends that Allen talked down to him and refused to help him stock merchandise and that Allen purportedly provided such assistance to Caucasian employees. Doc. 21-2 at 4-5. Ware alleges also that SBC required him to take more drug tests than the Caucasian employees. *Id*. at 6.

In January 2007, SBC downsized its Red Bull routes by eliminating Ware's route and a route in Huntsville assigned to Amanda Sipsey, a Caucasian female, purportedly because these two routes had low sales volume. Doc. 21-28 at 2-3. Ware disagreed with SBC's decision and testified that he "probably did" complain to Human Resources Manager Kristopher Fletcher, an African American, that SBC eliminated Ware's route because of his race. Doc. 21-2 at 5, 16. Ware testified that he also informed Fletcher that he was the only African American on the Red Bull routes, *id*., a contention SBC challenges since it maintains that Melvin Smith,

an African American, also worked as a Red Bull salesman.[2]  Doc. 21-28 at 1-2.

After SBC eliminated Ware's route, Casebere transferred Ware to a vacant position as a merchandiser on a beer route in which Ware reported to the Sales Supervisor Brad Phillips.  *Id*. at 1-3; Doc. 21-2 at 1-2; Doc. 21-29 at 2.  The parties disagree on whether SBC kept Ware's pay at the same rate or whether, as Ware contends, SBC reduced his pay to $400 per week plus mileage. Doc. 21-28 at 2-3; Doc. 21-29 at 2; Doc. 21-2 at 3.

SBC maintains that Ware received various complaints and written warnings related to his performance during his employment.  Doc. 21-29 at 2, 5-13.  One such warning occurred in mid-April 2007 when Ware refused to allow his supervisor to borrow the company van assigned to Ware.  Doc. 21-2 at 12. Apparently, Ware denied Phillips's request because Ware had permission from Johnny Bittle, SBC's head mechanic or fleet manager, to keep the van over the weekend since Ware did not have a car.  *Id*.  Presumably, other vans may have been available for Phillips to use since Bittle testified that SBC typically maintained one to three extra vans for use as needed.  Doc. 21-25 at 19, 22.  Marshall Nichols, the sales manager who investigated the incident, contends that Phillips instructed Ware

---

[2] SBC failed to provide Smith's personnel records and it is unclear when Smith worked as a Red Bull salesman.

to bring the van in for Phillips to use while Ware was out of town, that Bittle did not tell Ware he could keep the van, and that Bittle lacked the authority to make such a decision.  Doc. 21-11 at 35.  Ultimately, this incident resulted in Nichols and Phillips issuing Ware a warning for insubordination.  Doc. 21-11 at 42; Doc. 21-29 at 2, 10.

A few days later, Ware received two more written warnings for separate performance related issues, which prompted a discussion over email between Phillips and Nichols about discharging Ware.  Doc. 21-29 at 11-13.  Later that day, after reaching a consensus, Phillips and Nichols discharged Ware for insubordination and poor performance.  Doc. 21-29 at 14; Doc. 21-2 at 13-14; Doc. 21-11 at 43.  The performance warnings were related to Ware's purported failure to stock Red Bull at two store locations and refusal to complete a delivery, both on April 26, 2007.[3]  Doc. 21-29 at 11-12.  Although SBC contends otherwise in the write ups it issued Ware, Ware claims that SBC failed to previously counsel him about similar alleged infractions.  Doc. 21-2 at 9-11.  Ware supports his contention by pointing out that the "written counseling" sheet for one of the purported prior counselings referenced in his termination report is not signed and does not indicate

---

[3] SBC provided no explanation for why it issued Ware a write up for failure to stock Red Bull on April 26, 2007 when, as of January 8, 2007, it had transferred Ware from Red Bull to beer merchandising.

that Ware refused to sign.  *See* doc. 21-29 at 6-8.  Basically, Ware contends that

SBC manufactured the purported prior warnings to justify his discharge.

After his discharge, Ware filed a charge with the Equal Employment

Opportunity Commission (EEOC), in which he alleged that SBC "demoted [him]

from a sales person to a merchandiser due to downsizing," that his "duties were

assigned to five White employees who had less seniority," that SBC discharged

him when he returned from a two day leave after the van incident for

insubordination, that he "had no problems performing the duties of [his] job as a

salesperson or merchandiser and was the only Black in each of these departments,"

and that "White employees are not subjected to this treatment."  Doc. 21-10 at 1.

As support for these assertions, Ware contends also that SBC has a pattern or

practice of discriminating against African Americans, and brings the court's

attention to six other EEOC charges filed in 2007 by former African American

employees.  *See* Docs. 24-3, 24-5, 24-7, 24-9, 24-10, 24-13.  Ware contends further

that SBC regularly discriminates against African American employees by refusing

to provide them with helpers for unloading trucks, assigning them "to routes in the

predominately Black areas and in the projects" instead of "routes in good areas,"

giving them the worst delivery assignments, and subjecting them to racially

discriminatory comments.  Doc. 27 at 25-26.  Also, relying on information

8

provided by Caucasian delivery driver Jason Poer, Ware alleges that SBC solicited stores in African American communities to buy out-of-date beer at a discounted price.  Doc. 26-8 at 24-25.  The EEOC ultimately determined that it "found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge . . ."  Doc. 21-10 at 2.  The EEOC then issued  Ware a right to sue letter after it failed to "obtain a settlement" on Ware's behalf.  *Id*.

## III. ANALYSIS

Ware filed this action asserting claims under Title VII and § 1981 for racial discrimination and retaliation.  *See* doc. 1.  More specifically, Ware alleges discriminatory demotion and discharge, unequal pay, and retaliatory discharge. The court discusses only the claims for discriminatory demotion and discharge, and retaliatory discharge since Ware conceded his unequal pay claim in his response to SBC's motion.  Doc. 27 at 32.

**A.    Exhaustion Under Title VII**

SBC contends that it is due summary judgment on the discriminatory demotion and retaliatory discharge claims because of Ware's purported failure to

raise them in his EEOC charge.[4]  Doc. 20 at 19.  The law is clear that a plaintiff

seeking judicial relief under Title VII must first exhaust his administrative

remedies by raising that claim in a charge of discrimination.  *See* 42 U.S.C. §

2000e-5(b); *see Houston v. Army Fleet Services, LLC*, 509 F. Supp. 2d 1033, 1042

(M.D. Ala. 2007) ("[T]he scope of the judicial complaint is limited to the scope of

the EEOC investigation which can reasonably be expected to grow out of the

charge of discrimination.")(*quoting Sanchez v. Standard Brands, Inc.*, 431 F.2d

455, 466 (5th Cir. 1970)).  However, SBC's contention regarding the demotion

claim misses the mark because Ware alleged in his EEOC charge that he was

"demoted from a sales person to a merchandiser" and that his "duties were assigned

to five White employees who had less seniority."  Doc. 21-10 at 1.  These

allegations are sufficient for the court to find that Ware exhausted his

administrative remedies by alleging discriminatory demotion in his EEOC charge.

With respect to the retaliatory discharge claim, Ware concedes that he did

not articulate a retaliation claim in his EEOC charge and that his Title VII

retaliation claim fails as a result.  Doc. 27 at 30 n.7.  However, Ware asserts

correctly that retaliation claims under § 1981 do not carry the same administrative

---

[4] SBC also contends that Ware's alleged "pattern and practice of discrimination" claim
fails also.  However, Ware stated in his response that he is not alleging a pattern and practice, and
is instead using it as evidence to support his demotion and termination claims.

requirement and instead are subject to the four-year federal "catchall" limitations period.  *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336 (11th Cir. 2008). Since Ware filed this action on January 5, 2011, his § 1981 retaliation claim survives because the last purported retaliatory act occurred when SBC terminated him on April 27, 2007.  Doc. 21-10 at 1.

## B.    Discriminatory Demotion and Discharge Under Title VII and § 1981

The court turns now to the merits of Ware's Title VII and § 1981 demotion and discharge race discrimination claims, which "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  Accordingly, the court "explicitly address[es] the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." *Id.*  "A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008).  Where, as here, a plaintiff offers only circumstantial evidence, the court evaluates the sufficiency of his claim through the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).[5]

---

[5] Ware's motion to supplement his brief in opposition to SBC's motion for summary judgment with the opinion from *James Collins v. Supreme Beverage Company, Inc.*, 2:11-cv-00058-WMA, docs. 31 and 33, is **DENIED**.  The case specifically pertains to direct evidence of

Under this framework, the plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. "The successful assertion of a prima facie case then creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff." *Rioux*, 520 F.3d at 1275 (internal quotation marks and citations omitted). The burden then shifts to the employer to produce evidence that it had a legitimate non-discriminatory reason for the challenged action. *Id*. If the employer satisfies its burden, the burden shifts back to the plaintiff to "show that the proffered reason really is a pretext for unlawful discrimination." *Id*. (internal quotation marks and citations omitted).

1.    Discriminatory Demotion

Ware's first claim is that SBC demoted him from his Red Bull position because of his race. To establish a prima facie case of discriminatory demotion, Ware must show "(1) that [he] was a member of a protected class, (2) that [he] was

---

discrimination, which Ware failed to raise in this instance. "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. . . . [R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Standard*, 161 F.3d at 1330 (internal citations omitted). As such, "'only the most blatant remarks, whose intent could be nothing other than to discriminate on the [protected classification]' are direct evidence of discrimination." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1227 (11th Cir. 2002) (quoting *Damon v. Fleming Supermkts. of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999)). Ware failed to raise evidence of remarks made by a decision-maker with respect to his alleged discriminatory demotion or discharge, and thus his claim is based on circumstantial evidence. Likewise, SBC's motion to supplement it's brief in support of the motion for summary judgment, doc. 35, is **DENIED**.

12

qualified for the job, (3) that [he] suffered an adverse employment action, and (4) that [he] was replaced by someone outside the protected class." *Hinson v. Clinch Cnty, Georgia Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000). The only issues of contention are related to the third and fourth prongs. Doc. 20 at 22-23. According to Ware, his transfer from Red Bull sales to beer merchandising constituted an adverse employment action. Doc. 27 at 21-33. Moreover, he claims that SBC reassigned his duties to five Caucasian employees. *Id*. SBC counters that the elimination of Ware's route and his subsequent transfer were not a demotion or adverse employment action, that it did not replace Ware, and, alternatively, that Ware cannot dispute SBC's legitimate non-discriminatory reason for eliminating his Red Bull route.

a.   *Adverse Employment Action*

Generally, a "transfer [to a different position] can constitute an adverse employment action . . . if it involves a reduction in pay, prestige, or responsibility. We use an objective test, asking whether a reasonable person in the plaintiff's position would view the employment action in question as adverse." *Hinson*, 231 F.3d at 829 (internal quotation marks and citations omitted). In this instance, Ware asserts that he made more in the Red Bull position than in the beer merchandising position. Doc. 21-1 at 15; Doc. 21-2 at 3. SBC challenges Ware's assertion and

claims instead that it paid Ware $500 per week in both positions.  Doc. 21-29 at 2.

However, neither party offered the relevant payroll documents to support his or its

contentions.  Moreover, the parties also disagree on whether a beer merchandiser

has less responsibility and prestige than a salesperson.  *See* docs. 20 and 27.  While

SBC contends its version of the facts is more credible, at this juncture, the court

must construe the facts in the light most favorable to the non-moving party.

Consequently, the court finds that Ware has met his burden of showing that he

suffered an adverse employment action.

> b.    *Replacement by a Non-Protected Class Member*

SBC challenges Ware's prima facie case next by claiming that it did not

replace Ware.  While SBC has presented evidence that it eliminated Ware's route

and did not hire a replacement employee, it neglected to address Ware's contention

about the actual ongoing servicing of the accounts.  Unless SBC stopped selling

Red Bull on Ware's route completely, SBC presumably transferred the

responsibilities for servicing Ware's accounts to the rest of its sales force.

Critically, although one of the other sales persons is purportedly African American

and may have received some of Ware's duties,[6] SBC failed to present any evidence

---

[6] Again, SBC failed to provide the relevant payroll record.  As such, the record is unclear regarding whether the other African American employee held the Red Bull position contemporaneously to Ware.

14

regarding how it reallocated Ware's Red Bull duties.  Therefore, there is no

evidence in the record to refute Ware's contention that SBC replaced him by

assigning his duties to the Caucasian employees. Accordingly, because the court

must construe the facts in Ware's favor and because establishing a prima facie case

is not onerous, *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), the court

finds that Ware has met his burden of establishing a prima facie case.

    c.  *Pretext for Discrimination*

  Alternatively, SBC contends that, even if Ware can establish a prima facie

case, his demotion claim fails because SBC eliminated Ware's Red Bull route for a

legitimate reason, i.e. low sales volume.  To support this contention, SBC claimed

that another African American purportedly worked a Red Bull route that SBC did

not eliminate, and that the other route it eliminated belonged to a Caucasian female.

Doc. 21-28 at 1-3.  Ware does not address these contentions, except to argue that

SBC failed to provide the personnel records proving the existence of the other

African American salesman, nor does Ware rebut SBC's contention that his route

and the Caucasian female's had the lowest sales.  Instead, Ware contends only that

SBC's decision to assign him to a low sales route in a predominately African

American area was discriminatory and that SBC has a practice of assigning

minorities to routes in minority neighborhoods.  While such a practice would

indeed run afoul of the anti-discrimination laws, unfortunately for Ware, his contention does not carry his burden of establishing pretext for several reasons. First, the discriminatory assignment claim is one that Ware should have challenged in 2005, or at least by 2009, to have a timely claim under § 1981. Indeed, perhaps because Ware can no longer challenge the 2005 assignment, Ware expressly limits his claim in this lawsuit to "removal from a sales route/demotion. . . based on his race." Doc. 27 at 32. Second, Ware presented no evidence showing that a "more profitable" route existed at the time SBC assigned him his Red Bull route in 2005. While Ware maintains that SBC has a practice of assigning African Americans to the less lucrative routes in minority neighborhoods, absent a showing that a vacancy existed in the profitable Caucasian neighborhoods at the time of his initial assignment, the purported practice of discriminatory territory assignments does not help Ware establish that SBC's contention that it eliminated Ware's sales position because of low sales is pretextual. Third, although Ware maintains that he asked to transfer to one of the more profitable routes and that SBC gave the vacancies instead to Caucasian employees, Ware only offered vague testimony on these purported vacancies. Doc. 21-1 at 18-20. For example, Ware does not know when the vacancies occurred or the identity of the persons SBC hired, and presented no facts in his deposition for this court to conclude that SBC hired the successful

candidates because of their race. *Id*. at 19-20. In fact, Ware testified that he believed SBC hired these individuals because of their friendships with the hiring officials. *Id*. at 20. However, "[a]s a matter of law, favoring an employee because of friendship is not favoring the employee because of race." *White v. ThyssenKrupp Steel USA*, LLC, 743 F. Supp. 2d 1340, 1352 (S.D. Ala. 2010), citing *Greene v. Potter*, 557 F.3d 765, 771 (7th Cir. 2009); *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1170-71 (10th Cir. 2007). In short, SBC's alleged practice of assigning African Americans only to predominately minority neighborhoods, while deplorable if true, does not help Ware establish that racial animus factored in SBC's decision to eliminate his route.

Ultimately, Ware's failure to present evidence suggesting a race based reason for his removal from the Red Bull sales route is fatal to his discriminatory demotion claim. The court cannot conclude that SBC's articulated reason for eliminating Ware's position (low sales) is pretextual given the undisputed evidence that SBC simultaneously eliminated the route of a white female for the same reason. In the final analysis, "[a] reason cannot be a pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Blue v. Dunn Constr. Co., Inc.*, 453 Fed. Appx. 881, 884 (11th Cir. 2011) (emphasis in original) (internal quotation marks and citations omitted).

17

Ware failed to make either showing in this case.  Therefore, the court thus

**GRANTS** SBC's motion with respect to the demotion claim.

    2.    <u>Discriminatory Discharge</u>

    Ware contends next that SBC discharged him because of his race.  To

establish a prima facie claim for discriminatory discharge, Ware bears the burden

of showing "that he (1) was a member of a protected class, (2) was qualified for the

job, (3) suffered an adverse employment action, and (4) his employer treated

similarly situated employees outside his classification more favorably." *Ashmore*

*v. Secretary, Dept. of Transp*., No.12-10515, 2013 WL 28433, at *3 (11th Cir. Jan.

3, 2013) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.  1997)). SBC

contends that Ware cannot satisfy the second or fourth elements or, alternatively,

that Ware cannot establish that the articulated reasons for his discharge are

pretextual.

    a.    *Ware was Qualified for the Position*

    SBC first asserts that Ware "cannot show he was qualified [for the beer

merchandiser] position because during the few months he held the merchandiser

position, he continually failed to meet SBC's expectations for the position and was

reprimanded and counseled for poor performance."  Doc. 20 at 25.  This assertion

misses the mark and is more related to whether SBC had a legitimate reason to

discharge Ware rather than whether Ware was initially qualified for the position.

In fact, SBC originally hired Ware in 1994 as a beer merchandiser and Ware held

the position until his transfer to the Red Bull department in 2005.  It strains

credibility for SBC to argue that Ware was not qualified for a position Ware

worked in for approximately ten years and to which SBC transferred him back to in

2008.  Therefore, the courts finds SBC's argument unavailing.

### b.    *Alleged Failure to Identify a Comparator*

SBC asserts next that Ware failed to identify a similarly situated person

outside the protected class SBC purportedly treated more favorably.  Doc. 20 at 25-

26. Ware counters that under *Smith v. Lockheed-Martin* he does not have to

identify a comparator when there is sufficient circumstantial evidence of racial

discrimination.  Doc. 27 at 40.[7]  Specifically, Ware maintains that (1) SBC's failure

to counsel him for the alleged incidents referenced in his final write-up and which

formed the predicate for his termination, (2) SBC's admission that it has no proof

that it warned Ware about the purported earlier infractions, (3) his supervisors

talking down to him, making him take more drug tests, and failing to offer him the

---

[7] Ware also points to Jason Poer and James Thornton as Caucasian employees who had performance issues but were not immediately terminated.  Doc. 27 at 38.  However, the rest of Ware's argument centers on the *Lockheed-Martin* analysis, which implies the absence of a comparator.  *Id.*  Nonetheless, as discussed in the next section on pretext, the court agrees with Ware that Thornton is a proper comparator.

19

same help they offered Caucasian employees, and (4) evidence that seven other former SBC employees filed EEOC charges against SBC for racial discrimination are sufficient circumstantial evidence of discrimination to bypass the need to identify a comparator.  Doc. 27 at 39-40.[8]  Since "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case," the court agrees with Ware that the evidence he outlines "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  *Smith v. Lockheed-Martin*, 644 F.3d 1321, 1328 (11th Cir. 2011)(internal quotation marks and citations omitted).  Therefore, the court finds that Ware has established a prima facie case for his discriminatory discharge claim.

### c.    *Pretext for Discrimination*

In addition to establishing a prima facie case, to prevail Ware must also rebut SBC's articulated reasons for his discharge.  Again, SBC contends it discharged Ware because of insubordination and poor performance – to which Ware has

---

[8] While the other EEOC charges may imply that SBC engages in discriminatory practices, unfortunately for Ware, the EEOC charges do not lend to an inference that discriminatory animus factored in his discharge since the decision-makers responsible for Ware's discharge are not the same decision-makers in the adverse employment actions resulting in the other EEOC charges. *See* docs. 24-3, 24-5, 24-7, 24-9, 24-10, 24-13.

responded by presenting evidence of pretext.  With respect to the insubordination, it is undisputed that Ware refused to let his supervisor use the company van assigned to Ware.  However, giving Ware the inferences he is due as the non-movant, head mechanic Bittle's testimony shows that SBC ordinarily allowed Ware to take his van home, including on off days, since Ware did not own a car, and that there were one to three other vans available for the supervisor to use.  Based on these facts, although a company certainly has a right to use its vehicles only for company business, a jury could find that the discrepancies in the supervisor's decision to ask for Ware's van instead of using one of the available vans from the fleet, the request for Ware to hand over the van right before Ware took off a few days when SBC knew Ware did not have his own transportation, and the subsequent decision to write up Ware for refusing to comply,  may be sufficient for a jury to find – if it is so inclined – that the decision to discipline Ware for insubordination was pretext for unlawful discrimination.

A jury may decide to reach such a conclusion in light of Ware's contentions that his infraction only qualified as "failure to perform" under SBC's progressive discipline system.  To support this contention, Ware relies on Nichols, an SBC sales manager, who testified that a first offense did not ordinarily warrant a write up for insubordination; rather, SBC required a pattern of infractions after prior

discipline and counseling. Doc. 21-11 at 37-39. Although Nichols testified that he "was aware of a lot of other problems with [Ware]" that warranted issuing the next level of progressive discipline, Nichols also stated that he did not actually review Ware's personnel record prior to issuing the warning for insubordination. *Id*. If he had, perhaps he would have noticed that some of the purported prior counseling and disciplinary warnings are not signed by Ware. Doc. 21-29 at 5-12. Moreover, Nichols testified that SBC has no evidence showing that it actually issued Ware these alleged previous warnings. Doc. 21-11 at 43. Nichols's testimony and the general record create a discrepancy that is sufficient for Ware to have the opportunity to argue to a jury – as he maintains – that SBC purportedly fabricated the prior warnings SBC contends warranted its decision to elevate the infraction for the van incident from "failure to perform" to insubordination.

The discrepancy in the earlier written warnings is also relevant to the final two poor performance infractions Ware received that led to his termination. In these two April 2007 written warnings, SBC maintained that Ware failed to stock Red Bull product at two stores and refused to complete a delivery. Doc. 21-29 at 11-12. First, while neither side addressed the issue, the record is unclear as to why SBC disciplined Ware on April 26, 2007 for failing to stock Red Bull given that SBC removed Ware from the Red Bull group in January. Presumably, Ware filled

in for one of the Red Bull salesmen; however, the court cannot assume facts that are not in the record.  Moreover, in light of Ware's contention that SBC's decision to discharge him was pretext for race discrimination, the court simply cannot assume that this April 26, 2007 discipline for failure to stock Red Bull did not, in fact, pertain to conduct that occurred prior to Ware's January 8, 2007 transfer from the Red Bull group.  These missing facts are relevant to the court's evaluation of Ware's pretext claim.

Second, summary judgment is also inappropriate because of other discrepancies.  For example, SBC maintained that the two April 26, 2007 disciplinary warnings and the decision to discharge Ware were warranted because it had previously counseled Ware about similar infractions.  In fact, one of the two final poor performance warnings specifically states that Ware "has been verbally warned several times about stocking Red Bull." *Id*. at 11.  However, three of these written warnings Ware purportedly received are not signed by Ware and do not indicate that he refused to sign them. *See id.* at 5-11.  Moreover, Ware claims that he does not recall SBC counseling him about the alleged incidents or receiving the prior written warnings.  Doc. 21-2 at 10.  Ware's contentions, coupled with Nichols's testimony that SBC has no way to confirm that it actually issued the written warnings to Ware, cast sufficient doubt about the prior warnings that

23

require a credibility determination to resolve whether SBC or Ware is correct about the alleged prior warnings, or lack thereof, for similar infractions.

Finally, the motion is also due to be denied because Ware presented evidence that SBC failed to discharge at least one other SBC employee who also received multiple written warnings, including for insubordination. Specifically, although James Thornton admitted to several performance related issues, even after SBC purportedly placed him on "final warning" for a deposit error in 2005, it still did not discharge him when he received at least three subsequent written warnings. Doc. 26-11 at 29-30. Instead, according to the record, SBC opted to suspend Thornton for three days in 2009 when he engaged in insubordination and improper conduct. *Id*. at 19-20. To further confound matters, like Ware, Thornton also testified that SBC failed to counsel or warn him about the alleged infractions referenced in some of his written warnings, and, incredibly, that SBC failed to inform him that it had placed him on a final warning or had suspended him. *Id*. at 29-30. If Thornton is correct, SBC never placed him on a final warning or suspended him, meaning that Thornton may have received even less discipline than the records show. Such testimony by Thornton, if true, suggests that Ware may have more than speculation and conjecture to support his contention that SBC purportedly fabricated some of the written warnings in this case. In any event, this

24

is an issue for a jury to resolve after hearing from the parties and assessing their respective credibility.

Based on these facts, the court finds that significant factual issues remain regarding whether SBC's articulated reasons for Ware's discharge are pretext for discrimination. Accordingly, SBC's motion regarding discriminatory discharge is **DENIED**.

## C.   Retaliatory Discharge Under § 1981

Ware's final claim is that SBC discharged him in retaliation for engaging in a protected activity. "[T]he analysis for a retaliation claim brought pursuant to § 1981 mimics the analysis of a Title VII claim." *Williams v. Carrier Corp*., 889 F. Supp. 1528, 1530 (M.D. Ga. 1995). "To establish a prima facie case of retaliation[,] a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Tucker v. Talladega City Schools*, 171 Fed. Appx. 289, 296 (11th Cir. 2006) (internal quotation marks and citations omitted). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse employment action. *Id*. If the defendant is able to meet the burden, "the plaintiff must respond by showing that the employer's reasons are a pretext for retaliation" in order to

25

prevail.  *Id.*

Although SBC doubts that Ware engaged in a protected activity,[9] it contends

primarily that Ware's retaliation claim fails because he cannot demonstrate a causal

link between his purported protected activity and his discharge or that SBC's

reason for the discharge was pretextual.  Doc. 20 at 29.  The court  assumes that

Ware's complaint to Fletcher that SBC eliminated his Red Bull route because of his

race, *see* doc. 21-2 at 5, 16, is a protected activity.  Nonetheless, Ware's retaliation

claim fails because of the causation prong.

Generally, a plaintiff can satisfy the causation prong by "prov[ing] that the

protected activity and the negative employment action are not completely

unrelated."  *Meeks v. Computer Assocs.*, 15 F.3d 1013, 1021 (11th Cir.

1994)(internal citation and quotation mark omitted).  "To establish a causal

connection, a plaintiff must show that the decision-makers were aware of the

protected conduct, and that the protected activity and the adverse actions were not

wholly unrelated."  *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712,

716 (11th Cir. 2002).  Ware failed to make this showing.  Specifically, Ware

presented no evidence that Nichols and Phillips, the individuals who made the

---

[9] Ware testified that he "probably did" complain to Fletcher that SBC eliminated his route because of his race.  *See* doc. 21-2 at 5, 16.

decision to discharge him, "were aware of the protected conduct," i.e. the complaint to Fletcher.  While Ware maintains that the seven EEOC charges filed by former African American SBC employees paint a mosaic of racial discrimination, this contention fails to establish the causation prong or that SBC's articulated reasons for Ware's discharge are pretext for retaliatory conduct.  The referenced charges pertain to race and disability based discharge and, unlike Ware, in several instances the complainant presented direct evidence of discrimination in the form of racially derogatory statements made by the decision-making supervisor prior to termination or video evidence establishing that the articulated reason for discharge was false.  *See e.g.*, Doc. 24-3 at 2-3, Doc. 24-7 at 2.  Moreover, those instances of alleged discrimination involve different decision-makers.  Ultimately, the existence of the other EEOC charges does not salvage Ware's failure to show that the decision-makers responsible for his discharge were aware of his prior complaint. Absent such knowledge, no basis exists for the court to find that retaliatory animus motivated the discharge decision. Accordingly, SBC's motion on the retaliation claim is **GRANTED**.

## IV.  CONCLUSION

For the reasons stated more fully above, the court **DENIES** SBC's motion with respect to Ware's discriminatory discharge claim, but  **GRANTS** the motion

27

in all other respects.

   **DONE** this 25th day of February, 2013.


_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE